UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| VALENTINE MOKROV; EVGENE STAROV, STANISLAVA GLEYZERMAN, and INNA LITVINEKO, | : : : : | Index No: 1:20-cv-00588 (GBD) |
| Plaintiffs, | : | |
| v. | : : | |
| AEROFLOT RUSSIAN AIRLINES and VILEN KHILCHENKO | : : : | |
| Defendants. | : | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Defendants Aeroflot Russian Airlines ("Aeroflot") and Vilen Khilchenko respectfully submit this Reply Memorandum of Law in Further Support of their Motion to Dismiss the Second Amended Complaint ("SAC").

Plaintiffs have added nothing material to the arguments they advanced in opposition to Defendants' motion to dismiss the First Amended Complaint, which is virtually identical to the SAC.[1] Indeed, as explained below, concessions made by Plaintiffs further confirm the futility of their claims. Apart from failing to adequately address Defendants' arguments, and in some instances simply ignoring them, Plaintiffs offer no explanation of how a *fourth* Complaint will cure the pleading deficiencies identified by Defendants in three consecutive motions to dismiss. For that reason, the SAC should be dismissed without leave to amend.

## I. Plaintiffs Fail to Address the Inadequacies of Their Overtime Claims

### A. The Complaint Fails to Identify any Overtime Violation

Plaintiffs do not dispute that the ranges of scheduled "work" hours identified in the SAC actually include a one-hour meal break for each work day. Thus, Plaintiff Mokrov's 45 hour "work" weeks, for example, actually consisted of 40 hours of scheduled work time and five hours of scheduled break time, the latter requiring no compensation and triggering no overtime unless interrupted by substantial work requirements. It is now clear that no Plaintiff was ever actually scheduled to work more than 40 hours in any work week of their employment.

---

[1] There are no stand-alone issues to be resolved about Plaintiffs' recently added age discrimination claims. Plaintiffs have withdrawn their federal age discrimination claim and do not dispute that their state law age discrimination claims, like their state labor law claims, should be dismissed if no federal claims survive this motion.

1

The sufficiency of the overtime claims, then, turns on whether Plaintiffs' allegation that "Plaintiffs worked an uncompensated meal break at least two times a month, after already working at least 40 hours in a work week" satisfies the detailed requirements for alleging an overtime claim in this Circuit. SAC ¶ 61.  As already explained in Defendants' initial memorandum of law, it does not.  Plaintiffs were required but failed to allege uncompensated overtime in a specific "given week."

No case cited by Plaintiffs saves the SAC from its fatal lack of specificity about overtime hours worked by any Plaintiff in a "given week."  The first two cases involved unopposed motions for default judgments, in which the pleading requirements of *Dejesus* and *Lundy* were not even mentioned let alone applied.  Had those pleadings requirements been applied, the complaints in the default judgment cases would have survived because, unlike here, they contained clear, unequivocal allegations of uncompensated overtime throughout the entire periods of employment in question.  *See Reyes v. Lincoln Deli Grocery Corp.*, 2018 WL 2722455, at *1, *6 (S.D.N.Y. June 5, 2018) (plaintiff worked 72 to 85 hours per week, establishing that he routinely worked in excess of 40 hours per week), <u>order clarified,</u> 2018 WL 3105070 (S.D.N.Y. June 25, 2018); *Liang Huo v. Go Sushi Go 9th Ave.*, 2014 WL 1413532, at *2 (S.D.N.Y. Apr. 10, 2014) (plaintiff worked 11 hours per day, 55 hours per week).

The pro se plaintiff in *Green v. New York City Transit Auth.*, 2019 WL 1428336, at *7 (S.D.N.Y. Mar. 28, 2019) did not even assert an overtime claim.  The Court nonetheless considered whether the factual allegations of the complaint could support an overtime claim and found that they could not for lack of any specific allegation that plaintiff "worked over forty hours *in any given work week.*" *Id*. at 7 (emphasis added).

2

Plaintiffs suggestion that *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013), loosened the pleadings requirements of *Dejesus* and *Lundy* is simply false. *Nakahata* did not loosen anything and, in fact, followed *Dejesus* and *Lundy* in affirming the district court's dismissal of the complaint:

> [a]bsent any allegation that Plaintiffs were scheduled to work forty hours in a *given* week, these allegations do not state a plausible claim for such relief. To plead a plausible FLSA overtime claim, Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a *given* week. For these reasons, the District Court properly dismissed the FLSA and NYLL overtime claims.

*Id*. at 201 (emphasis added).

The remainder of the cases cited by Plaintiffs involve clear unequivocal allegations of specific work periods (usually the entire course of employment) of uncompensated overtime. See *Alarcon Adame v. EVIR Corp.*, 2019 WL 3287086, at *1 (S.D.N.Y. July 22, 2019) (complaint easily met Rule 12(b)(6) plausibility standard where it alleged the approximate start times, end times, and number of days per week worked throughout *the entire time employed*) (emphasis added); *Werst v. Sarar USA Inc.*, 2018 WL 1399343, at *6 (S.D.N.Y. Mar. 16, 2018) (one plaintiff provided *detailed chart of weekly shifts* and other plaintiff *'"worked for 53.07 hours physically in the store plus another approximately five hours working from home for a total of 58.07 hours worked" in the week of February 8, 2016'*) (emphasis added); *Lawtone-Bowles v. City of New York*, 2017 WL 4250513, at *4 (S.D.N.Y. Sept. 22, 2017) (plaintiffs sufficiently alleged 40 hours of work in a *given* work week as well as some uncompensated time in excess of the 40 hours); *Leon v. Port Washington Union Free Sch. Dist.*, 49 F. Supp. 3d 353, 357 (E.D.N.Y. 2014) (Plaintiff alleges that she *regularly worked forty hours per week*, and provided sufficient estimates of how much additional time she worked *each week*) (emphasis added); *Perry v. City of New York*, 2013 WL 6641893, at *3 (S.D.N.Y. Dec. 17, 2013) (two groups of employees that alleged, respectively,

40 hour scheduled work weeks 35 weeks per year and 40 hour work weeks every week of the year with *each group alleging additional uncompensated work time "on a daily basis"*) (emphasis added).[2]

In contrast to the complaints in the cases cite by Plaintiffs, the SAC is exactly the kind of complaint found wanting in *Dejesus, Lundy* and their progeny. For each Plaintiff, the SAC merely identifies ranges of scheduled work weeks, which at the low end fall far short of 40 hours, and then asserts rotely that Defendants failed to pay "an overtime premium for all hours worked in excess of forty (40) hours per week." See *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87 (2d Cir. 2013) (allegation of forty plus hours "in some or all weeks" insufficient); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (allegation that plaintiff "occasionally" worked overtime insufficient).

The prima facie inadequacy of the overtime claims here is reinforced by Plaintiffs' failure to acknowledge, let alone address, that an interrupted meal break is compensable only if predominantly spent on activities for the employer's benefit. See *Wolman v. Catholic Health Sys. of Long Island, Inc.*, 853 F. Supp. 2d 290, 303 (E.D.N.Y. 2012), aff'd in part, rev'd in part sub nom. *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013). The SAC nowhere states that a single meal break interruption was so intrusive as to involve predominantly work activity.

---

[2] Plaintiffs have not provided the Court with the *Cuesto v. Piller* decision, which is neither published nor available on Westlaw or Lexis. If the Court is inclined to obtain the decision from Pacer, it will find that the plaintiff there alleged his work hours over a definite period of time and alleged "that he worked *an additional 37 hours per week above what already amounted to over 40 hours.*" (emphasis added).

## II.     <u>Plaintiffs Fail to Address the Inadequacies of Their Retaliation Claims</u>

Plaintiffs parrot the elements of a retaliation claim but do not address specific pleading deficiencies identified in Defendants' initial Memorandum of Law (and in the previous motions to dismiss).

    A. Plaintiff's Alleged Complaints to Aeroflot did not Hint that they were Legal in Nature

Plaintiffs admit that a complaint to the employer must be "'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the [FLSA] and a call for their protection.'" Plaintiffs' Memorandum at 18 (quoting *Dunn v. Sederakis*, 143 F. Supp. 3d 102, 111 (S.D.N.Y. 2015)).  Employee complaints that do not raise issues proscribed by the FSLA or which are based on company policy rather than law, do not satisfy this requirement.  See *Id.* at 109-14.

There is no hint in the SAC that the only two Plaintiffs who allegedly complained were complaining about unlawfulness of any kind, let alone a violation of the FSLA.  To the contrary, the SAC admits that they were allegedly aggrieved by nothing more than a violation of Aeroflot's own meal break policy.  The meal break allegations are in an SAC subsection entitled "Defendant Aeroflot Failed to Pay Plaintiffs for being on call and working during Meal Breaks" (which title, notably, says nothing about "law").  The subsection begins with three paragraphs describing or quoting Aeroflot's internal policy about meal breaks, as set forth in the company's Employee Handbook:

> 53. Defendant *Aeroflot had a policy* which provides for uncompensated meal breaks.
>
> 54. Defendant Aeroflot's Employee Handbook states that "Meal breaks are intended to provide employees an opportunity away from work, and employees are not permitted to perform any work during meal breaks."

> 55. *Defendant Aeroflot's Employee Handbook* further states that "Any employee who performs work during their meal break must notify their supervisor so that the appropriate adjustment can be made to grant the full meal break. Employees are responsible for reporting any supervisor or manager who encourages or requires work during meal beaks to the human resources department or the General Director."
>
> 56. Defendants did not provide Plaintiffs with an uninterrupted meal break for the time period 2014-2019.

(emphasis added)

Clearly, it was Aeroflot's own policy that was the framework and springboard of Plaintiffs' complaints at the time.

When the meal break section of the FAC does get around to its terse description of two Plaintiffs' actual complaints to management about interrupted meal breaks, neither the word "overtime" or any suggestion of unlawfulness appears:

> 62. Valentin Mokrov and Evgene Starov complained to both their Station Manager Yakovlev and Lidieth Zamorea of Human Resources that they were not paid in full for their interrupted lunch period.

As admitted in the SAC, the complaining plaintiffs were simply unhappy that they were being forced to work through meal breaks without compensation regardless of whether any particular interrupted meal break implicated the FSLA or any other law.  Even if Plaintiffs had made an "opaque and unexplicated reference to "overtime" - which, again, the SAC contains no hint of - it would have provided no basis "for the listener to infer that" the reference "was meant to claim a violation of the FLSA." *Id.* at 13.

As a stand-alone issue, the failure to pay an hour's wage for an interrupted meal break is not governed by the FSLA and thus complaints about such failure cannot support a retaliation

6

claim.³  See *Nakahata., Inc.,* 723 F.3d at 201 (2d Cir.2013) ("The FLSA statute requires payment of minimum wages and overtime wages only"); *Dunn,* 143 F. Supp.3d at 110-11 (same).  If an uncompensated meal break does not push the employee's work week past the forty-hour threshold for overtime, the FSLA is not concerned with it.

      B.  Plaintiffs Gleyzerman and Litvineko Engaged in No Protected Activity

Plaintiffs fail to address the absence of any viable retaliation claim for Plaintiffs Gleyzerman and Litvineko, who admittedly engaged in no protected activity whatsoever (backpedaling from a false allegation to the contrary in the original Complaint).  Defendants' Memorandum at 11-14.  Plaintiffs also fail to (a) identify any law allowing one employee's complaints to vicariously become the complaints of another employee, or (b) explain how that the SAC's obtuse, curt reference to other employees "speaking" on behalf of Gleyzerman and Litvineko even satisfies Rule 8.  *Id*. at 12.  Finally, Plaintiffs fail to address the fatal absence of any allegation that Defendant Khilchenko, who allegedly made the decision to terminate Plaintiffs, was even aware of Plaintiffs' supposed complaints to lower level employees when he terminated Plaintiffs.  *Id*. at 19-21.

      C.  Standing Alone, a Two Month Delay Between Allegedly Protected Activity and Alleged Retaliation is too Attenuated to Establish Causation

Whether or not the Second Circuit has established a bright line rule about the temporal proximity between protected activity and alleged retaliation, "district courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the

---

³ That is why, putting aside its facial dubiousness, the assertion that Plaintiffs meal breaks were interrupted every single day from 2014 and 2019, is a legal red herring.  See Plaintiffs' Memorandum at 21.  The only legally relevant meal break interruptions were those that pushed a work week past the forty-hour overtime threshold.  The SAC admits that those happened only "on occasion."  SAC ¶ 60.

adverse employment action does not allow for an inference of causation." *Garrett v. Garden City Hotel, Inc.,* 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007); see *De Figueroa v. New York*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019); *Rightnour v. Tiffany & Co.*, 354 F. Supp. 3d 511, 527 (S.D.N.Y. 2019); *Avillan v. Donahoe*, 2015 WL 728169, at *15 (S.D.N.Y. Feb. 19, 2015); *Herschman v. City Univ. of New York*, 2011 WL 1210200, at *19 (S.D.N.Y. Feb. 28, 2011), report and recommendation adopted, 2011 WL 1210209 (S.D.N.Y. Mar. 29, 2011); *Ponticelli v. Zurich Amer. Ins. Group,* 16 F.Supp.2d 414, 436 (S.D.N.Y.1998).

Moreover, it is not true that the Second Circuit has declined to adopt a bright line rule about temporal proximity. The Second Circuit and the district courts have given leeway to plaintiffs about temporal proximity where there are allegations or evidence of retaliatory intent *other than* the temporal proximity between the protected activity and the adverse employment action, or where there are multiple adverse actions, some of which occur very close in time to protected activity. See *Salazar v. Bowne Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 385 (E.D.N.Y. 2011) (citing cases and discussing significance of "other actions" suggesting retaliatory intent); *Lamberson v. Six W. Retail Acquisition, Inc.*, 122 F. Supp. 2d 502, 512 (S.D.N.Y. 2000) (two month gap was not too attenuated where plaintiff's received a "glowing" performance review shortly before protected activity that allegedly led to retaliation).

In *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545 (2d Cir. 2001), which was not a labor law case, some of the alleged retaliation occurred within a few days of protected activity. *Id*. at 555. In contrast, in a case where there was no other evidence of retaliatory intent, the Second Court held that the passage of two months, standing alone, was too attenuated as a matter of law to support a finding of causation:

where the protected activity took place two months prior to the alleged adverse action, and where there is nothing other than that temporal proximity invoked to establish a retaliatory intent, the causal relationship is not established.

*Stoddard v. Eastman Kodak Co.*, 309 F. App'x 475, 480 (2d Cir. 2009).

### III.  **Plaintiffs Concede that the State Claims Should be Dismissed if the Federal Claims are Dismissed**

Plaintiffs offer no reason for the Court to retain jurisdiction over the state labor law and discrimination claims if the federal claims are dismissed. Accordingly, the state claims should be dismissed if the Court finds that Plaintiffs have failed to state claims under the FLSA. The Court need not consider the failure of Plaintiffs' state law spread of hours claim, discussed in the next section.[4]

### IV.  **Plaintiffs are not Covered by the Spread of Hours Regulations of NYLL**

Plaintiffs (again) cite two cases for the proposition that an employee making more than the minimum wage can assert a spread of hours claim under the NYLL. Construing the plain language of the governing regulations and taking into account the New York State Department of Labor's own position on the issue, the overwhelming majority of courts have rejected those two cases. See *Luna v. Gon Way Constr., Inc.*, 2017 WL 835321, at *11 (E.D.N.Y. Feb. 14, 2017), report and recommendation adopted, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017); *Ramos v. Telgian Corp.*, 176 F. Supp. 3d 181, 204 (E.D.N.Y. 2016), on reconsideration in part, 2017 WL 354200 (E.D.N.Y.

---

[4] The claim under NYLL 195(1), for failure to post certain information in the workplace, provides a maximum recovery of $5000 to each Plaintiff. Although academic at this point if the FLSA claims are dismissed, we are constrained to note that Plaintiffs fail to state a claim under this provision because they fail to allege that the violation "occurred at the time of hiring." *Kone v. Joy Constr. Corp.*, 2016 WL 866349, at *5 (S.D.N.Y. Mar. 3, 2016).

Jan. 24, 2017); *Guadalupe v. Tri-State Emp't Mgmt. & Consulting, Inc.*, 2013 WL 4547242, at *12-13 (E.D.N.Y. Aug. 28, 2013); *Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 532 (S.D.N.Y. 2013); *Hernandez v. NJK Contractors, Inc.*, 2013 WL 12363005, at *10 (E.D.N.Y. Feb. 12, 2013); *Roach v. T.L. Cannon Corp.*, 889 F. Supp. 2d 364, 367 (N.D.N.Y. 2012); *Janus v. Regalis Const., Inc.*, 2012 WL 3878113, at *10 (E.D.N.Y. July 23, 2012), report and recommendation adopted, 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012); *Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 474 (E.D.N.Y. 2011); *Zubair v. EnTech Eng'g P.C.*, 808 F. Supp. 2d 592, 601 (S.D.N.Y. 2011); *Drozd v. Vlaval Const., Inc.*, 2011 WL 9192036, at *17 (E.D.N.Y. Oct. 18, 2011), supplemented sub nom. Drozd v. Vlaval Constr., Inc., 2011 WL 13294535 (E.D.N.Y. Dec. 1, 2011), report and recommendation adopted sub nom. *Drozd v. Vlaval Const., Inc.*, 2012 WL 4815639 (E.D.N.Y. Oct. 10, 2012), and report and recommendation adopted sub nom. *Drozd v. Vlaval Const., Inc.*, 2012 WL 4815639 (E.D.N.Y. Oct. 10, 2012); *Li Ping Fu v. Pop Art Int'l Inc.*, 2011 WL 4552436, at *7 (S.D.N.Y. Sept. 19, 2011), report and recommendation adopted as modified, 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011); *Almeida v. Aguinaga,* 500 F.Supp.2d 366, 370 (S.D.N.Y.2007); *Espinosa v. Delgado Travel Agency,* 2007 WL 656271, at *1–2 (S.D.N.Y. Mar. 2, 2007); *Jenkins v. Hanac, Inc.,* 493 F.Supp.2d 556, 558 (E.D.N.Y. 2007); *Franklin v. Breton Int'l, Inc.,* 2006 WL 3591949, at *4 (S.D.N.Y. Dec. 11, 2006).

### V.     The Documents Submitted by Defendants May be Considered on this Motion

Plaintiffs protest Defendants' use of supposedly improper materials outside the four corners of the SAC. Plaintiffs begin by challenging Defendants' supposed reliance on the superseded original Complaint. Plaintiffs, however, have it backward. We are relying on an admission (by subtraction) in the SAC itself. We point out that the pending SAC dropped the

allegation in the superseded pleading that Plaintiffs Gleyzerman and Litvineko complained on their own behalf about interrupted meal breaks, leaving the legally untenable idea that the actions of Mokrov and Starov in complaining could somehow be imputed vicariously to them to establish protected activity for purposes of a retaliation claim.

As for the documents attached to the Zamora Declaration, they are properly before the Court because they are either referred to in or integral to the SAC.  See. e.g. *Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 400 (E.D.N.Y. 2015) (considering text messages between plaintiff employee and employer); *Kaplan v. Wings of Hope Residence, Inc.*, 2020 WL 616630, at *4 (E.D.N.Y. Feb. 7, 2020) (text message); *Pearson Capital Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392, 402 (S.D.N.Y. 2015) (while not referred to as explicitly as other documents, letters between parties were integral to complaint and would be considered).

The SAC expressly refers to Aeroflot's Employee Handbook, which frames and forms the basis of Plaintiffs' supposed protests about interrupted meal breaks (and establishes the procedures Plaintiffs were supposed to follow to remedy interrupted meal breaks and, more generally, to make overtime claims).  Plaintiffs refer to their supposed complaints about payment issues in the SAC and therefore the actual record of such complaints are integral, if not expressly incorporated by reference, in the SAC.  *Turner v. Nazareth Coll.*, 2011 WL 310787, at *1 (W.D.N.Y. Jan. 28, 2011) (court considered Plaintiff's written correspondence with Defendant regarding her employment because they were incorporated by reference in complaint and integral to her claims of discrimination and retaliation).  Plaintiffs allege a pattern of non-payment of overtime and therefore the actual documented record of Plaintiffs' overtime history consisting of regular, extremely generous and basically automatic overtime payments controlled by Plaintiffs themselves is integral to the Complaint.

## VI.     Plaintiffs Should not be Given Leave to File a Fourth Complaint.

"Where it appears that granting leave to amend is unlikely to be productive ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993).  Defendants have now had multiple opportunities to fix their pleadings, if possible, or to defend them against Defendants'' substantially identical prior motions.  Plaintiffs unadorned request to file a *fourth* Complaint is unaccompanied by any explanation of how it will be different from the prior three pleadings.   Under the circumstances, leave to replead should be denied.  See *Inst. for Dev. of Earth Awareness v. People for Ethical Treatment of Animals*, 2009 WL 2850230, at *5 (S.D.N.Y. Aug. 28, 2009) (where plaintiff was on notice of defendant's arguments, was granted leave to amend but failed to cure deficiencies, and identified no additional facts that if alleged would cure deficiencies, leave to amend denied), adhered to on reconsideration sub nom. *Inst. for Dev. of Earth Awareness v. People for the Ethical Treatment of Animals*, 2009 WL 3254457 (S.D.N.Y. Oct. 9, 2009); *In re 1993 Corning Sec. Litig.*, 1996 WL 257603, at *9 (S.D.N.Y. May 15, 1996) (no reason to believe that repleading will rescue Plaintiffs' deficient allegations; leave to amend denied).

*     *     *     *     *

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Plaintiffs' Second Amended Complaint with prejudice.

Dated: November 2, 2020

Respectfully, submitted,

By: _[signature]_
Eric Wertheim
BAILEY DUQUETTE, P.C.
104 Charlton St., 1W
New York, NY 10014
T: (212) 658-1946
eric@baileyduquette.com

*Attorneys for Defendants*
