USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JUN 1 5 20

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- x

VALENTIN MOKROV, EVGENE STAROV,
STANISLAVA GLEYZERMAN, and INNA
LITVINEKO,

                      Plaintiffs,

       -against-

AEROFLOT RUSSIAN AIRLINES and VILEN
KHILCHENKO,

                      Defendants.

------------------------------------- x

MEMORANDUM DECISION
AND ORDER

20 Civ. 588 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiffs Valentin Mokrov, Evgene Starov, Stanislava Gleyzerman, and Inna Litvineko bring this action pursuant to the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), as well as New York State Human Rights Law ("NYHRL"), and New York City Human Rights Law ("NYCHRL") against their former employer Aeroflot Russian Airlines and Vilen Khilchenko. Plaintiffs assert claims for, among other things, failure to pay overtime and retaliation. (Second Amended Complaint ("SAC"), ECF No. 35, at ¶¶ 141–192.)[1] Defendants move to dismiss the Second Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*See* Notice of Mot. to Dismiss ("Notice of Mot."), ECF No. 36.) Defendants' motion to dismiss is GRANTED.

### I.   FACTUAL BACKGROUND

Plaintiffs were employed by Defendant Aeroflot as either Airport Supervisors or Airport Sales Supervisors at John F. Kennedy Airport in New York City. (SAC ¶¶ 19, 20, 72, 86, 97, 108.)

---

[1] At oral argument and in their opposition briefing Plaintiffs withdrew their first two causes of action for age discrimination and retaliation under the Employment Act. (See Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Mem. in Opp'n"), ECF No. 41, at 2.)

1

As Airport Supervisors, Plaintiffs' duties included meeting flights upon arrival at JFK, ensuring that planes were "secured, cleaned, fueled, unloaded and loaned," and providing customer service. (*Id.* ¶ 22.) Defendant Vilen Khilchenko was employed by Aeroflot as a General Director for Aeroflot's operations in the United States. (*Id.* ¶ 23.) Khilchenko oversaw Aeroflot's operations in New York, had hiring and firing capabilities, created work schedules, determined pay rates, and was responsible for ensuring "that all employees were paid properly." (*Id.* ¶ 24.)

Aeroflot had a policy of paying Plaintiffs' overtime. (*Id.* ¶ 30.) Plaintiffs were required to complete paperwork documenting their overtime hours and submit the paperwork to their Station Manager, Vladimir Yakolev. (*Id.* ¶ 27, 31.) Plaintiffs allege that they "worked longer hours than their scheduled hours due to weekly problems, including . . . delayed flights." (*Id.* ¶ 32.) Aeroflot would pay Plaintiffs' overtime claims "although frequently, the overtime was not paid in the proper paycheck." (*Id.* ¶ 37.) Aeroflot also had a policy that provided for uncompensated meal breaks, which were "intended to provide employees an opportunity away from work, and employees [were] not permitted to perform any work during meal breaks." (*Id.* ¶¶ 53–54.) Plaintiffs allege that "on occasion" these meal breaks were interrupted by work obligations and that "at least two times a month" they worked their uncompensated meal breaks after they had already worked forty hours in a work week. (*Id.* ¶¶ 60–61.) Plaintiffs claim they were not paid overtime hours for their interrupted meal breaks. (*Id.* ¶¶ 79, 90, 102, 113.)

According to Plaintiffs, throughout 2018 Plaintiffs Morkrov and Starov complained to both their station manager and human resources "that they were not paid in full for their interrupted lunch period." (SAC ¶¶ 62–63.) The SAC alleges that Mokrov and Starov spoke on behalf of themselves and all other Plaintiffs. (*Id.*) Each Plaintiff was terminated in March 2019. (*Id.* ¶ 67.)

2

Plaintiffs claim that this firing was retaliatory "after complaining about not being compensated after working through meal breaks." (*Id.*)

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires the plaintiff to plead facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The factual allegations pled must therefore "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).[2]

A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.*; *see also Targum v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013). In deciding the 12(b)(6) motion, the court must also draw all reasonable inferences in the non-moving party's favor. *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119–20 (2d Cir. 2013).

---

[2] "In deciding a motion to dismiss under Rule 12(b)(6), the court may refer 'to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Fishbein v. Miranda*, 670 F. Supp. 2d 264, 271 (S.D.N.Y. 2009) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

3

## III. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE FAIR LABOR STANDARDS ACT

### A. Plaintiffs' Overtime Claim

Under the FLSA, "no employer shall employ any [] employees . . . for a workweek longer than forty hours" unless the employee receives compensation for his employment in excess of forty hours "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). In the Second Circuit, "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). In "[d]etermining whether a plausible claim has been pled is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The inclusion of an approximation of overtime hours in the complaint, while not a requirement, "may help draw a plaintiff's claim closer to plausibility." *Id*. at n.7.

In two subsequent cases, the Second Circuit sought to clarify the degree of specificity required to satisfy this standard. In *Nakahata v. New York–Presbyterian Healthcare System, Inc.*, the Second Circuit affirmed the dismissal of FLSA overtime claims where the plaintiffs "merely alleged that they were not paid for overtime hours worked" and "that Plaintiffs were not compensated for work performed during meal breaks, before and after shifts, or during required trainings." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). While these allegations raised the "possibility" that plaintiffs were not compensated for their overtime hours, they failed to state a plausible claim for relief because the plaintiffs did not allege that they "were scheduled to work forty hours in a given week." *Id.* Thus, *Nakahata* counsels that "[t]o plead a plausible FLSA overtime claim, Plaintiffs must provide sufficient detail about the

4

length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Id.*

Similarly, in *DeJesus v. HF Management Services, LLC* the Second Circuit applied *Lundy* and *Nakahata* in affirming the dismissal of FLSA overtime claims because the plaintiff "did not estimate her hours in any or all weeks or provide any other factual context or content." *DeJesus v. HF Mgmt. Servs., LLC,* 726 F.3d 85, 89 (2d Cir. 2013). Clarifying the requirement that plaintiffs must allege overtime without compensation in a "given" workweek, the *DeJesus* court stated that *Lundy*:

> [W]as not an invitation to provide an all-purpose pleading template alleging overtime in "some or all workweeks." It was designed to require plaintiffs to provide some factual context that will "nudge" their claim "from conceivable to plausible." *Twombly*, 550 U.S. at 570. While this Court has not required plaintiffs to keep careful records and plead their hours with mathematical precision, we have recognized that it is employees' memory and experience that lead them to claim in federal court that they have been denied overtime in violation of the FLSA in the first place. Our standard requires that plaintiffs draw on those resources in providing complaints with sufficiently developed factual allegations.

*Id.* at 90.

Defendant asserts that Plaintiffs' FLSA claim must be dismissed for failure to state a claim because Plaintiffs have not identified the hours of uncompensated overtime worked in any single "given work week" and thus fail to plead their overtime claims with the detail required by *Lundy*, *Nakahata,* and *DeJesus*. (Defs.' MTD Mem. at 9–11.)

Plaintiffs' SAC alleges, in relevant part, that "Plaintiffs' meal breaks on occasion occurred after they had worked forty (40) hours per week; therefore, Plaintiffs were entitled to overtime" and that "Plaintiffs worked an uncompensated meal break at least two times a month, after already working at least 40 hours in a work week." (SAC ¶¶ 60, 61.) The SAC then provides, for each Plaintiff, a range of work schedule hours over a broad and approximate time period. (*Id.* ¶¶ 74–

5

78, 88–89, 99–101, 110–112.) For example, for "the time period 2014 through in or about August 2017, Valentin Mokrov worked two (2) days consisting of 11 hours each and then had two days off." (*Id.* ¶ 74.) Thus, "he was scheduled to work either three (3) or four (4) days per week for a total of 33 or 44 hours per week." (*Id.*) "Each workday always *included* a scheduled uncompensated meal break of one hour." (*Id.*) (emphasis added.) Importantly, when the three or four weekly hour-long meal breaks are included, no scheduled work week exceeds forty work hours per week. Thus, in the example provided, Mr. Mokrov was scheduled to *work* thirty to forty hours.[3] After providing their work schedules, Plaintiffs each allege that they did not receive "an overtime premium for all hours worked in excess of forty (40) hours per week." (SAC ¶¶ 79, 90, 102, 113.)

These allegations are insufficient to plead a plausible overtime claim under the FLSA. Plaintiffs do not specify, even approximately, how many hours in excess of forty that they worked per week or when they were required to do so. Instead, they rely on the bare allegation that "on occasion" their meal breaks were interrupted, pushing some unspecified work weeks over forty hours. But allegations that a plaintiff "typically," "occasionally," or "regularly" worked more than forty hours a week, without more, are insufficient to state a claim. *See Kuck v. Planet Home Lending, LLC*, 354 F. Supp. 3d 162, 168–69 (E.D.N.Y. 2018) (collecting cases); *see also Bonn-*

---

[3] This is true for each Plaintiff. When the daily uninterrupted meal break is accounted for no Plaintiff was scheduled to work more than forty hours per week. While the crux of Plaintiffs claim is that these meal breaks were interrupted, thus entitling them to overtime, there are no specific allegations in the SAC which would allow the Court to plausibly conclude that there were weeks in which Plaintiffs worked beyond forty hours because of interrupted meal breaks. Furthermore, Plaintiffs do not allege that their meal breaks, when interrupted, were "predominantly for the benefit of the employer." *Reich v. S. New Eng. Telecomms. Corp.*,121 F.3d 58, 65 (2d Cir. 1997). Plaintiffs allege that during meal breaks they were "required to keep a radio and/or operation phone with them," "not allowed to go very far from their work area," and "required to stop meals and return to work" when directed to do so. (SAC ¶¶ 57–59.) But the SAC is devoid of any facts regarding the nature of any meal break interruptions. It is also unclear how many meal breaks were missed altogether or just interrupted. Thus, Plaintiffs have failed to allege any compensable meal break interruptions.

employee 'occasionally' or 'typically' missed breaks provides 'nothing but low-octane fuel for speculation, not the plausible claim that is required.'") (quoting *Lundy*, 711 F.3d at 115). Moreover, given Plaintiffs' admission that they were often scheduled to work less than forty hours per week it is difficult (if not impossible) to discern how many or which weeks Plaintiffs were required to work beyond forty hours. (*See, e.g.* SAC ¶¶ 74–76.) Plaintiffs have simply not "provide[d] sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata*, 723 F.3d at 201.

## B. Plaintiffs' Retaliation Claim

The FLSA provides that it is "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]." 29 U.S.C. § 215(a)(3). A plaintiff alleging retaliation under the FLSA "must first establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010).

In *Greathouse v. JHS Security, Inc.*, the Second Circuit held that the phrase "file any complaint" included "oral complaints made to an employer." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 115 (2d Cir. 2015). Thus, an "employee may premise a [FLSA] retaliation action on an oral complaint made to an employer, so long as . . . the complaint is 'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'" *Id.* at 107 (quoting *Kasten v. Saint–*

7

*Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)). Courts interpreting this standard have held that the protected complaint must allege that the employer engaged in an FLSA violation (i.e., nonpayment of minimum wages and overtime wages.) *See Dunn v. Sederakis*, 143 F. Supp. 3d 102, 112 (S.D.N.Y. 2015) (collecting cases).

Here, Plaintiffs' alleged FLSA retaliation claim is straightforward. The SAC alleges that Plaintiffs Mokrov and Starov "complained to both their station manager . . . and . . . Human Resources that they were not paid in full for their interrupted lunch period." (SAC ¶ 62.) The SAC further alleges that Plaintiffs Mokrov and Starov "spoke on behalf of themselves and the other Plaintiffs in this case at least once a month in 2018." (*Id.* ¶ 63.) Plaintiffs were each "fired in March 2019 after complaining about not being compensated after working through meal breaks." (*Id.* ¶ 67.) These rather cursory allegations are the extent of the detail provided by the SAC regarding the oral complaints made by Plaintiffs Mokrov and Starov.

The SAC contains no allegations that Plaintiffs Gleyzerman and Litvineko ever directly complained, orally or otherwise, to Defendants regarding a lack of compensation for interrupted meal breaks. These Plaintiffs have not provided, and the Court is unaware of, any case law supporting the proposition that the protected activity of one employee may be imputed to other employees allowing them to bring federal retaliation claims.[4] Thus, because the SAC fails to plead that Plaintiffs Gleyzerman and Litvineko ever engaged in any protected activity their FLSA retaliation claims are dismissed.

---

[4] An employee's oral complaint in support of the FLSA rights of other employees can be the premise of a retaliation claim under § 215(a)(3) for the complaining employee. *See Corpes v. Walsh Constr. Co.*,130 F. Supp. 3d 638, 642 (D. Conn. 2015). But that is not the situation presented here with respect to Plaintiffs Gleyzerman and Litvineko who neither complained directly to defend their own rights or the rights of other employees.

8

As to the oral complaints made by Mokrov and Starov, they do not meet the standards laid out in *Greathouse* and *Kasten*. Defendant Aeroflot had a policy that provided employees with "uncompensated meal breaks" and Aeroflot's employee handbook stated that these breaks were "intended to provide employees with an opportunity away from work [during which] employees [were] not permitted to perform any work." (SAC ¶¶ 53–54.) Plaintiffs Mokrov and Starov allege that they complained monthly throughout 2018 that "they were not paid in full for their interrupted lunch period." (SAC ¶ 62–63.) This allegation is insufficient. The SAC allegations do not demonstrate that Plaintiffs provided Aeroflot with a basis to infer that they were claiming an FLSA overtime violation, as opposed to expressing a complaint over Aeroflot's internal policy on uncompensated meal breaks during which no work was to be performed. *See Dunn*, 143 F. Supp. 3d at 113 (dismissing plaintiff's FLSA retaliation claim where plaintiff did not allege that her oral complaints "invoked the FLSA" or accused employer of illegality and finding that, when viewed in context, plaintiff's complaints "concerned non-FLSA matters."); *see also Watkins v. First Student, Inc.*, 2018 WL 1135480, at *10 (S.D.N.Y. Feb. 28, 2018) (dismissing FLSA retaliation claims where plaintiff alleged she told manager that she "noticed her overtime hours were not being paid properly, many going into categories not known to her, and being paid at many different rates of pay" but did not allege that she provided manager "with a basis for him to infer that she was claiming an FLSA . . . violation, as opposed to expressing that she did not understand her overtime pay or flagging a potential clerical error") (internal quotation marks omitted). The SAC does not allege that Mokrov and Starov ever invoked the FLSA, accused Defendant of any illegality, or even articulated facts to Defendant that were indicative of a FLSA violation. Accordingly, Plaintiffs Mokrov and Starov's FLSA retaliation claims are dismissed.

9

## IV. PLAINTIFFS' NYLL, NYHRL, and NYCHRL CLAIMS ARE DISMISSED

A district court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367(a), which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Subsection (c) provides that a district court "may decline to exercise supplemental jurisdiction over a claim" if the court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity— will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir.2003) (quoting *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 349–50 (1988)). Here, all of Plaintiffs' FLSA claims have been dismissed. Accordingly, judicial economy, fairness, convenience and comity will be served best by declining to exercise supplemental jurisdiction over Plaintiffs' remaining state and city law claims. Plaintiffs' NYLL, NYHRL, and NYCHRL claims are DISMISSED without prejudice.

## V. LEAVE TO AMEND

Plaintiffs indicate in their opposition brief that should their claims be denied, they intend to move for leave to file a Third Amended Complaint. (*See* Mem. in Opp'n at 22–23.) Defendants oppose leave to further amend. (Defs.'s Reply Mem. in Supp. of Mot. to Dismiss, ECF No. 42, at 12.) Federal Rule of Civil Procedure 15(a) provides that a district court may grant leave to amend "freely . . . when justice so requires." Fed. R. Civ. P. 15(a). *See also Perez v. 117 Ave. of the Ams. Food Corp.*, 2016 WL 5415090, at *1 (S.D.N.Y. 2016) ("A district court has broad discretion in

10

determining whether to grant leave to amend.") (citation omitted). Plaintiffs filed their initial Complaint on January 22, 2020. (*See* ECF No. 1.) Defendants filed their first motion to dismiss on March 16, 2020. (*See* ECF No. 12.) Plaintiffs responded to Defendants' motion to dismiss by filing an Amended Complaint on April 6, 2020. (*See* ECF No. 14.) On April 20, 2020, Defendant's again moved to dismiss. (*See* ECF No. 18.) Plaintiffs filed a letter motion on July 24, 2020 seeking leave to file a Second Amended Complaint. (*See* ECF No. 29.) On August 25, 2020, Defendants informed the Court that they would not oppose Plaintiffs' request to file a Second Amended Complaint. (*See* ECF No. 33.) The next day, the Court granted Plaintiffs' application. (*See* ECF No. 34.) Defendants subsequently filed the instant motion to dismiss the Second Amended Complaint.

Plaintiffs have not identified any additional facts that they would allege if leave to further amend were granted. Plaintiffs have been on notice of Defendants' arguments since the filing of the first motion to dismiss on March 16, 2020. Moreover, Plaintiffs have been given two opportunities to address any deficiencies in their complaint but have failed to properly allege any facts that would allow this Court to infer the plausibility of their claims. *See Inst. for Dev. of Earth Awareness v. People for Ethical Treatment of Animals*, 2009 WL 2850230, at *5 (S.D.N.Y. Aug. 28, 2009) (denying leave to amend where plaintiff was on notice of arguments, had previous opportunity to amend, and identified no additional facts that would cure pleading deficiencies.) Accordingly, Plaintiffs' request for leave to again amend the complaint is DENIED.

## VI. CONCLUSION

Defendants' motion to dismiss the Second Amended Complaint, (ECF No. 36), is GRANTED. The Clerk of Court is directed to close the motion and the case accordingly.

Dated: June 15, 2021
      New York, New York

                                                SO ORDERED.

                                                *George B. Daniels*
                                                GEORGE B. DANIELS
                                                United States District Judge